UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEN GOHN, | No. 2:25-cv-03430-JAM-DMC |
| Plaintiff, | |
| v. | **ORDER GRANTING TRUMARK FINANCIAL CREDIT UNION'S MOTION TO DISMISS** |
| TRUMARK FINANCIAL CREDIT UNION; TRIVERITY, INC.; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; and EQUIFAX INFORMATION SERVICES, LLC, | |
| Defendants. | |

Plaintiff Kristen Gohn, who became the victim of identity theft in 2021, brings several causes of action against a credit union, debt collector, and the credit reporting agencies, alleging violations of state and federal fair credit reporting and debt collection acts.  The credit union in question, Defendant TruMark Financial Credit Union ("TruMark"), which is organized under the laws of and headquartered in Pennsylvania, now moves to dismiss Plaintiff's claims against it for lack of personal jurisdiction, arguing it lacks sufficient minimum contacts with California to satisfy due process requirements.

1

As discussed further below, the Court agrees and finds that the Court lacks personal jurisdiction over TruMark.  Accordingly, the Court grants dismissal of Plaintiff's claims against TruMark without leave to amend.

## I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff, a citizen of California, became aware she was the victim of identity theft in November 2021 when she received a call from Best Buy asking for an individual named "Kristen Roberson," a name Plaintiff has never used.  First Am. Compl. ("FAC") ¶¶ 28-31, ECF No. 20.  Plaintiff subsequently received alerts that multiple hard inquiries had been made on her credit file that she did not authorize.  Id. ¶ 32.  Plaintiff reviewed her credit reports and discovered multiple accounts, inquiries, addresses, phone numbers, and personal identifiers falsely associated with her, including the name "Kristen Roberson," a fraudulent address at 4820 Westminster Avenue, Philadelphia, PA 19131, and a phone number 302-459-6008.  Id. ¶ 33.

Of note here, the fraudster opened several accounts at TruMark, a credit union organized under the laws of and headquartered in Pennsylvania.  Id. ¶¶ 16, 37; Monari Decl. ¶¶ 6-9, ECF No. 27-1.  The fraudster opened credit card account ending 4323 on September 22, 2021, which was charged off for more than $15,000; credit account ending 0004 on September 15, 2021, which was charged off for more than $5,800; and credit account ending 0001 on September 22, 2021, which was charged off for nearly $15,000.  FAC ¶ 37.  Those accounts were opened using the false name, false Pennsylvania address, and false phone number listed above.  Id. ¶ 42.

At the time the fraudulent TruMark accounts were opened, TruMark had accessed and reviewed a consumer credit profile associated with Plaintiff's Social Security number.  Id. ¶ 38.  That credit profile identified Plaintiff as a California resident, reflecting longstanding California addresses, California-based credit activity, and a credit history tied to the State of California.  Id. ¶ 39.  The identity used to open the TruMark accounts did not match Plaintiff's true legal identity, as Plaintiff's correct surname is "Rogerson" (a name she has not used since 2019), while the fraudulent applications and accounts listed the surname "Roberson."  Id. ¶ 40.  Based on this, Plaintiff alleges that TruMark knew that the identity used to open the accounts belonged to a California citizen, but still permitted the fraudster to open several accounts with the fraudster's false name, false Pennsylvania address, and false phone number.  Id. ¶¶ 41–42.

On October 16, 2024, Plaintiff sent a comprehensive written dispute package to Defendants Trans Union LLC, Experian Information Solutions, Inc., and Equifax Information Services, LLC (collectively, the Credit Reporting Agencies, or "CRAs"), which included her identity-theft affidavit, police report, annotated disclosures, identity documents, and proof of residence.  Id. ¶ 43.  This dispute was transmitted to TruMark through the CRAs.  Id. ¶ 44.  The CRAs reviewed Plaintiff's dispute package and verified the "fraudulent" TruMark accounts as belonging to Plaintiff.  Id. ¶¶ 45–47.  Thus, the TruMark accounts remained on Plaintiff's credit reports.  Id. ¶ 48.  Plaintiff alleges the CRAs and TruMark failed to conduct a

3

reasonable investigation into Plaintiff's dispute, as they ignored "clear" evidence provided by Plaintiff that the accounts were fraudulent.  Id. ¶¶ 49–87.

Based on these allegations, Plaintiff brings two causes of action against TruMark for (1) Violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x; and (2) Violation of the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1 et seq.  Id. ¶¶ 122-31.  TruMark moves to dismiss these claims under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) or, alternatively, to transfer venue under 28 U.S.C. § 1404(a) to a district court in Pennsylvania.  See Mot. Dismiss or Transfer ("Mot."), ECF No. 27.  This matter is fully briefed and was submitted without oral argument under Local Rule 230(g).  See Pl.'s Opp'n ("Opp'n"), ECF No. 33; TruMark's Reply ("Reply"), ECF No. 36; ECF No. 42.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  In opposing a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction is proper.  Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015).  Where the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).

///

4

The court may consider evidence presented in affidavits to assist it in its determination. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001), abrogated on other grounds by Daimler AG v. Bauman, 571 U.S. 117, 126 (2014). "Uncontroverted allegations in the complaint are taken as true, but in the face of a contradictory affidavit, the 'plaintiff cannot simply rest on the bare allegations of its complaint.'" Yamashita v. LG Chem, Ltd., 62 F.4th 496, 502 (9th Cir. 2023) (quoting Mavrix, 647 F.3d at 1223); see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977) (a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit"). Rather, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted).

Where, as here, no federal statute authorizes personal jurisdiction, the law of the state in which the district court sits applies. Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1484 (9th Cir. 1993). California's long-arm jurisdictional statute is coextensive with federal due process requirements. Id. Due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). "Depending on the strength of those contacts, there are two forms that personal jurisdiction may take: general and specific." Picot, 780 F.3d at 1211.

///

General jurisdiction exists when the defendant is domiciled in the forum state or has contacts with the forum state that are so "continuous and systematic" as to render the defendant "at home" in that forum. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Specific jurisdiction exists when a suit arises out of or relates to the defendant's contacts with the forum. Walden v. Fiore, 571 U.S. 277, 284 (2014). In the Ninth Circuit, specific jurisdiction is determined by a three-prong test: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)). "The plaintiff bears the burden of satisfying the first two prongs of the test[,]" while the burden of the third prong shifts to the defendant. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

### III. OPINION

A.   Sanctions

As a preliminary matter, the Court notes that Plaintiff's Opposition is 21 pages in violation of this Court's Order re

6

Filing Requirements that such filings are limited to 15 pages. See ECF No. 4-2. Thus, the Court will impose monetary sanctions of $50.00 per page, or $300.00, against Plaintiff.

    B.    Personal Jurisdiction

TruMark argues that the Court lacks both general and specific personal jurisdiction over TruMark. Mot. at 7-11. TruMark argues that the Court lacks general jurisdiction because TruMark is domiciled in Pennsylvania, not California. Id. at 7-8; see also Monari Decl. ¶¶ 6-9 (attesting that TruMark is organized under the laws of and headquartered in Pennsylvania). TruMark also argues that the Court lacks specific jurisdiction because TruMark operates solely within Pennsylvania and has never purposefully directed any activities towards California; Plaintiff's claims arise solely out of contact with TruMark in Pennsylvania, not California; and exercising jurisdiction would pose an unreasonable burden "on TruMark—a regionally based not-for-profit that does not offer nationwide credit services—by having to defend an action in a jurisdiction where it has never before filed or defended a lawsuit, thousands of miles away from its home . . . ." Mot. at 8-11. Thus, TruMark contends Plaintiff's claims against it should be dismissed. Id. at 11.

    In opposition, Plaintiff concedes that the Court may not assert general jurisdiction over TruMark. See generally Opp'n. However, Plaintiff argues that the Court may assert specific jurisdiction over TruMark because TruMark purposefully directed tortious conduct at Plaintiff in California by opening credit accounts with her personal information despite knowing of the "glaring mismatch between the identity in the credit profile and

7

the identity on the applications"; Plaintiff's claims arise out of TruMark's contacts with California as TruMark "knowingly extended credit using a consumer credit profile tied to a California resident while ignoring clear indicators of fraud"; and, given that Plaintiff is the victim of fraud and California has an interest in protecting its citizens, it would be fair and reasonable to subject TruMark to personal jurisdiction in California.  Id. at 6-15.

The Court disagrees with Plaintiff and finds that it lacks personal jurisdiction over TruMark.  As stated above, courts in this circuit apply a three-part test to determine whether they can exercise specific personal jurisdiction over a defendant: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'"  Axiom Foods, 874 F.3d at 1068. The plaintiff bears the burden of satisfying the first two prongs of the test. Schwarzenegger, 374 F.3d at 802.  "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state."  Id.

Plaintiff has failed to meet this burden here.  With respect to the first prong, the purposeful availment analysis is most often used in suits sounding in contract, while the purposeful direction analysis is most often used in suits sounding in tort. Id.  As Plaintiff's claims sound in tort, the Parties agree that

the purposeful direction test is appropriate here.  See Mot. at 9-10; Opp'n at 10-11.  "[T]he purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." Briskin v. Shopify, Inc., 135 F.4th 739, 751 (9th Cir. 2025) (en banc).

Here, Plaintiff argues that "there is no question that Trumark's conduct satisfies the purposeful direction test." Opp'n at 10.  Plaintiff contends that, before approving the accounts at issue, Trumark intentionally accessed and reviewed a consumer credit profile associated with Plaintiff's Social Security number which unmistakably identified Plaintiff as a California resident and reflected a longstanding California credit history, which contradicted the name, Pennsylvania address, and phone number used to apply for the Trumark accounts. Id.  These allegations "demonstrate that Trumark knowingly directed its conduct at a California consumer by accessing and relying on Plaintiff's California credit profile while extending credit to a plainly inconsistent identity," thereby intentionally harming a California resident.  Id. at 11.

The Court disagrees that such conduct satisfies the purposeful direction test.  Within the purposeful direction test, the "expressly aimed" analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  Walden, 571 U.S. at 285.  Simply put, "the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form

the necessary connection with the forum State that is the basis for its jurisdiction over him." Id. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Janus v. Freeman, 840 F. App'x 928, 930 (9th Cir. 2020) (citation omitted). Thus, to satisfy the purposeful direction test, Plaintiff must show that TruMark expressly aimed its conduct at California. Plaintiff fails to do so.

In support of its Motion to Dismiss, TruMark provides a declaration from TruMark representative John Monari, who attests that TruMark is organized under the laws of Pennsylvania, is headquartered in Pennsylvania, and has never maintained a presence in, or conducted any business in, California. Monari Decl. ¶¶ 1–36. Monari further attests that TruMark limits its membership to "anyone who lives, works, worships, volunteers, attends school, or is a family member of a credit union member in the Southeastern Pennsylvania Counties of Bucks, Chester, Delaware, Montgomery, and Philadelphia." Id. ¶ 37. "[M]embership is not available to persons who are residents of the State of California at the time a membership application is submitted." Id. ¶ 40. Monari explains that "[o]n or about August 30, 2021, an individual by the name of Kristen Roberson applied for membership at TruMark." Id. ¶ 42. As part of her application, Roberson reported having a permanent present address at 4820 Westminster Avenue, Philadelphia, PA 19131, with a telephone number of 302-459-6008, and an email address of k8roberson8@gmail.com. Id. ¶ 43. Monari provides copies of a Pennsylvania driver's license and utility bill Roberson submitted

10

along with the application to confirm her Westminster Avenue address.  Id. ¶ 44.  Monari attests that "[m]embership at TruMark was offered to Roberson exclusively based on the zip code of her Pennsylvania Address, which confirmed Roberson's residence in Philadelphia County, Pennsylvania, making her an eligible applicant."  Id. ¶ 45.

This evidence persuasively demonstrates that TruMark did not expressly aim any conduct at California, as TruMark neither conducted any business in California, nor intentionally directed any business activities (including offers of membership to its credit union) towards California citizens.  Plaintiff does not contest this evidence.  Rather, Plaintiff argues that TruMark "knew or reasonably should have known" it was offering membership to a California citizen based on the differences between Plaintiff's credit profile and the false name, Pennsylvania address, and phone number used for the credit applications.  Opp'n at 10-11.  Even if this were true, it is insufficient to satisfy the purposeful direction test.  A theory of individualized targeting, which Plaintiff appears to utilize here, "alleges that a defendant 'engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'"  Axiom Foods, 874 F.3d at 1069.  In Walden, 571 U.S. 277, however, the Supreme Court held that a defendant's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."  Id. at 289.  Following Walden, district courts in this Circuit have recognized that a "theory of individualized targeting, which relies on a

11

plaintiff's strong connection to a forum and the defendant's knowledge that the plaintiff is a resident of that forum and will experience foreseeable harm in that forum, on its own will no longer support a finding of express aiming." Liggett v. Utah Higher Ed. Assistance Auth., No. 8:19-cv-01589-JLS-ADS, 2020 WL 1972286, at *6 (C.D. Cal. Feb. 3, 2020) (quoting Deveroux v. TT Mktg. Inc., No. 1:18-CV-487 AWI SAB, 2018 WL 3968249, at *2 (E.D. Cal. Aug. 16, 2018) (internal quotation marks and alterations omitted)). Rather, the "personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." Picot, 780 F.3d at 1214.

The Court finds that TruMark did not expressly aim its conduct at California by, for example, sending correspondence to Plaintiff at a California address. Plaintiff's argument is that TruMark should have known of Plaintiff's California connections when it authorized the accounts at issue. Opp'n at 8. This falls short of meeting the purposeful direction standard. See, e.g., id. at 1214–15 (affirming dismissal for lack of personal jurisdiction when plaintiff alleged defendant's tortious conduct targeted him, a California resident, because defendant engaged in his allegedly tortious conduct "without entering California, contacting any person in California, or otherwise reaching out to California"); Deveroux, 2018 WL 3968249, at *5 (concluding that "direct targeting alone is not sufficient" when the plaintiff alleged that the defendant misreported plaintiff's debt while knowing that the plaintiff was a resident of the forum state, as "[t]here must be contacts by the defendant with the forum, not

merely with a forum resident").

Given that Plaintiff has failed to carry her burden of showing TruMark purposefully directed any conduct towards California and is therefore unable to meet the first prong of the personal jurisdiction test, the Court need not analyze the remaining two requirements.  TruMark's Motion to Dismiss is granted.

## IV.   ORDER

For the reasons above, TruMark Financial Credit Union's Motion to Dismiss (ECF No. 27) is GRANTED.  Plaintiff's First and Second Causes of Action are DISMISSED against TruMark without leave to amend since further amendment would be futile.

In addition, Counsel for Plaintiff is ordered to pay $300 to the Clerk of Court no later than June 8, 2026.

IT IS SO ORDERED.

Dated: June 2, 2026

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE

13